STATE of Missouri, Respondent,

v.

Roy Eugene HARRIS, Appellant.

No. WD 63356.

Missouri Court of Appeals,
Western District.

March 8, 2005.

Irene C. Karns, Appellate Public Defender Columbia, MO, for appellant.

Deborah Daniels, Assistant Attorney General Jefferson City, MO, for respondent.

Before EDWIN H. SMITH, C.J., HOWARD and NEWTON, JJ.

EDWIN H. SMITH, Chief Judge.

Roy E. Harris appeals the judgment of his conviction, after a jury trial in the Circuit Court of Boone County, of first-degree tampering with a motor vehicle, § 569.080.1(2).[1] As a result of his conviction, he was sentenced as a persistent offender, § 558.016, to six years in the Missouri Department of Corrections.

The appellant raises two points on appeal. In Point I, he claims that the trial court plainly erred in overruling his motions for judgment of acquittal at the close of the State's and all the evidence because, in violation of due process, the State failed to establish an essential proof element of the offense charged, under § 569.080.1(2), that the vehicle in question was sold by the appellant. In Point II, he claims that the trial court plainly erred by failing to, *sua sponte*, declare a mistrial after a witness testified concerning inadmissible evidence of the appellant's bad character, that he had been warned "to be careful around" the appellant.

We affirm.

### Facts

In September of 2002, the appellant went to Head Motor Company in Columbia, Missouri, where he talked with Roger Tolson, a salesman, about purchasing a car. On a subsequent visit in January of 2003, Tolson told the appellant about a car he was interested in selling, a 1988 Nissan Maxima, which Tolson co-owned with his girlfriend, Leslie Nash. The appellant, who was interested in buying the car, was allowed on two separate occasions to take the Maxima, for several hours, on test drives. In February of 2002, the appellant agreed to purchase the car for $1,000, but never came up with the money to complete the sale.

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

On February 10, 2003, Tolson drove the Maxima to work and parked it between two vans on a side street near the car lot, with the title to the vehicle in the glove compartment. When Tolson went to leave for lunch between 1:00 and 2:00 p.m., the vehicle was gone. At about 6:00 p.m., Tolson was leaving work in one of the company's vehicles, when he saw the Maxima traveling down the street. Tolson flagged down the vehicle and informed the driver, Franklin Jackson, that the car belonged to him. Jackson explained that he bought the car from the appellant and showed Tolson the title, which had Tolson's forged signature on it. Tolson called the police, who subsequently arrested the appellant.

On March 21, 2003, the appellant was charged, by indictment, in the Circuit Court of Boone County with tampering in the first degree, in violation of § 569.080.1(2). The appellant's case was tried to a jury on August 12, 2003. Jackson testified at trial that he first met the appellant in early February of 2003 at Jackson's mother's house, and that a few days later, the appellant returned to the house in Tolson's Maxima and asked Jackson if he knew of anyone who was interested in buying a car. Jackson replied that he was, but no deal was reached between Jackson and the appellant on that date.

On February 10, 2003, the appellant once again returned to Jackson's mother's house in the Maxima and asked Jackson if he was still interested in buying a car. Jackson replied that he was, and the appellant agreed to sell the Maxima to him for $800. Jackson gave the appellant the money, and the appellant gave Jackson a title to the Maxima, purportedly signed by "Roger Tolson." Jackson then went to the

Department of Revenue to title the Maxima in his name where he was informed that he needed the signature of Tolson's girlfriend, since she co-owned the vehicle with Tolson. Jackson contacted the appellant about getting Nash's signature on the title. The appellant told Jackson that he would meet him later that day, and the two of them would go to Nash's residence to get her signature. However, before the meeting could take place, the appellant was arrested and the vehicle was impounded.

Tolson testified at trial concerning his contacts with the appellant and the circumstances surrounding the disappearance of the Maxima. When asked whether he suspected initially that the appellant was somehow involved in the disappearance of the Maxima, he testified: "Yes, I did, because I had spoken to someone at the garage, and they informed me that I probably needed to be careful around him." The appellant's trial counsel objected to the witness's answer as being non-responsive and asked that it be stricken. The trial court sustained the objection and ordered the answer stricken from the record. The appellant's trial counsel did not ask for any further relief.

The jury found the appellant guilty of first-degree tampering, and on September 22, 2003, he was sentenced, as a persistent offender, to six years in the Missouri Department of Corrections.

This appeal followed.

### Standard of Review

The appellant concedes that as to both of his claims of error, he failed to preserve them for appellate review. Thus, he asks for plain error review under Rule 30.20.[2]

---

**2.** All rule references are to the Missouri Rules of Criminal Procedure, 2004, unless otherwise indicated.

■ Rule 30.20 provides, in pertinent part, that "[w]hether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or a miscarriage of justice has resulted therefrom." The plain error rule should be used sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review. *State v. Carr*, 50 S.W.3d 848, 853 (Mo.App.2001). In determining whether to exercise its discretion to provide plain error review, the appellate court looks to determine whether on the face of the appellant's claim substantial grounds exist for believing that the trial court committed a "plain" error, which resulted in manifest injustice or a miscarriage of justice. *State v. Dudley*, 51 S.W.3d 44, 53 (Mo.App.2001). "Plain" error for purposes of Rule 30.20 is error that is evident, obvious and clear. *State v. Hibler*, 21 S.W.3d 87, 96 (Mo.App.2000).

■ If the appellate court chooses to exercise its discretion to conduct plain error review, the process involves two steps. First, the court must determine whether the trial court committed error, affecting substantial rights, that was evident, obvious and clear. *Id.* As in the case of our review for "regular" error, not every obvious error found in plain error review mandates reversal. *Carr*, 50 S.W.3d at 853. In the case of review for "regular" error, to be reversible, the found error must have prejudiced the appellant. *State v. Taylor*, 67 S.W.3d 713, 715 (Mo.App.2002). Likewise, in the case of review for plain error, the error found must have prejudiced the appellant, except that such prejudice must rise to the level of manifest injustice or a miscarriage of justice. *State v. Cole*, 71 S.W.3d 163, 170 (Mo. *banc* 2002). Thus, even if obvious and clear error is found in the first step of the review, the second step of plain error review requires the court to determine whether manifest injustice or a miscarriage of justice resulted therefrom. *Hibler*, 21 S.W.3d at 96.

## I.

■ In Point I, the appellant claims that the trial court plainly erred in overruling his motions for judgment of acquittal at the close of the State's and all the evidence because, in violation of due process, the State failed to establish an essential proof element of the offense charged, under § 569.080.1(2), that the vehicle in question was sold by the appellant to Jackson. Specifically, the appellant claims that the State failed to make a submissible case as to this proof element in that there was no evidence that legal title to the vehicle ever passed so as to constitute a sale for purposes of § 569.080.1(2). Inasmuch as we do not find, for the reasons discussed, *infra*, substantial grounds on the face of the appellant's claim for us to believe that the trial court committed evident, obvious, and clear error resulting in manifest injustice or a miscarriage of justice to the appellant, we decline plain error review.

■ As a matter of due process, the State, in order to convict a defendant of an offense, is required to prove each and every element of the offense charged, beyond a reasonable doubt. *State v. Scurlock*, 998 S.W.2d 578, 582 (Mo.App.1999). The appellant claims that the State failed to do that in that to convict him of a violation of § 569.080.1(2), as charged, the State had to show, *inter alia*, that he sold the vehicle in question and failed to do so in that there was no evidence that legal title to the vehicle ever passed from the true owners, Tolson and Nash.

Section 569.080.1(2) reads:

1. A person commits the crime of tampering in the first degree if:

. . .

(2) He knowingly receives, possesses, sells, alters, defaces, destroys or unlawfully operates an automobile, airplane, motorcycle, motorboat or other motor-propelled vehicle without the consent of the owner thereof.

The State alleged that the appellant violated this section in that he "knowingly and without the consent of the owner *sold* an automobile, a tan 1988 Nissan Maxima." (Emphasis added.) Hence, the State, in order to convict, had the burden of proving that the appellant sold the vehicle.

The appellant is contending, on appeal, that to show a sale, for purposes of § 569.080.1(2), the State had to show not only that he gave physical possession of the vehicle to Jackson, but that legal title of the vehicle also passed to Jackson, which the State concedes did not occur in that the title was not signed by the owners of the Maxima, Tolson and Nash. However, the State contends that this was not fatal to its case in that to show a sale, for purposes of § 569.080.1(2), it did not have to prove that legal title to the Maxima passed to Jackson. Thus, as framed by the parties, the issue for us is how to interpret the term "sells" as it appears in § 569.080.1(2).

In interpreting a statute, we are to ascertain the intent of the legislature. *Pavlica v. Dir. of Revenue*, 71 S.W.3d 186, 189 (Mo.App.2002). In determining the legislature's intent, we are required to consider and give meaning to all of the terms used in a statute. *State ex rel. Nixon v. Estes*, 108 S.W.3d 795, 798 (Mo.App.2003).

> Words employed in a statute are given their usual and ordinary meaning unless the legislature itself has defined a particular term or phrase. The statutory definition should be followed in the interpretation of the statute to which it relates and is intended to apply and supersedes the commonly accepted dictionary or judicial definition and is binding on the courts.

*Id.* (citations omitted). Inasmuch as "sells" is not defined in § 569.080.1(2), and it has not been defined by case law for purposes of that statute, we must ascertain and give effect to the legislative intent of that term by giving it its plain and ordinary meaning. *State v. Johnson*, 964 S.W.2d 465, 469 (Mo.App.1998).

For his part, the appellant, in claiming as he does as to the definition of "sells," relies on a definition of "sale" found in Black's Law Dictionary, which states that a sale is "[a] contract between two parties ... by which the [seller], in consideration of the payment or promise of payment of a certain price in money, transfers to the [buyer] the title and possession of the property." BLACK'S LAW DICTIONARY 1200 (5th ed.1979). In other words, the appellant seeks to impose a definition of "sells" that would require not only a showing that physical possession of the vehicle passed, but that legal title also passed. It is worthy of note, however, that the most recent edition of Black's Law Dictionary defines "sale" as "[t]he transfer of property *or* title for a price." BLACK'S LAW DICTIONARY 1200 (7th ed.1999) (emphasis added). This more current definition is consistent with the broader definition which we conclude, *infra*, that the Legislature intended in § 569.080.1(2).

The definition sought by the appellant for "sells" defies logic inasmuch that would mean that the State could never obtain a conviction, under § 569.080.1(2), for the sale of a vehicle in that, under that definition, the State would be required to prove two mutually exclusive propositions: (1) the sale was "without the consent of the owner;" and, (2) legal title was passed by the owners. Section 301.210.1 requires that in order for legal title to pass to a motor vehicle, the owner must "endorse on

the [certificate of ownership] an assignment thereof." Obviously, an owner, who does not consent to a sale, is not going to endorse an assignment on the certificate of ownership so as to pass legal title. Thus, the two proof elements that would be mandated by the definition of "sells" that the appellant argues for legally cannot exist in the same universe of proof. Hence, if we were to find the definition of "sells" that the appellant urges, we would effectively be removing the unauthorized sale of a motor vehicle as a theory of the offense of first degree tampering with a motor vehicle, under § 569.080.1(2). This would be contrary to the maxim of statutory construction that the "legislature intended that every word, clause, sentence, and provision of a statute have effect." *Hyde Park Housing P'ship v. Dir. of Revenue*, 850 S.W.2d 82, 84 (Mo. *banc* 1993).

▆ In the absence of a statutory definition and case law interpreting a term in the context of the statute in question, the dictionary may be used to derive the plain and ordinary meaning of a term. *Avila v. Cmty. Bank of Va.*, 143 S.W.3d 1, 5 (Mo. App.2003). The dictionary defines "sell" as "to give up, deliver, or exchange (property, goods, services, etc.) for money or its equivalent." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 1219 (3rd ed.1997). This definition is consistent with the definition given "sell" by the court in *State v. Miller*, 318 Mo. 581, 300 S.W. 765, 767 (1927).

▆ As this court stated in *Pharmflex Inc. v. Division of Employment Security*, 964 S.W.2d 825, 830 (Mo.App.1997) (*citing Citizens Elec. v. Dir. of Dep't of Revenue*, 766 S.W.2d 450, 452 (Mo. *banc* 1989)): "When the legislature enacts a statute referring to a term which it does not define and which has judicial or common law meaning attached to it, the legislature is presumed to have acted with knowledge of that meaning." "[W]here a statute uses words which have a definite and well known meaning at common law it will be presumed that the terms are used in the sense in which they were understood at common law, and they will be so construed unless it clearly appears that it was not so intended." *State v. Duggar*, 806 S.W.2d 407, 408 (Mo. *banc* 1991) (citations omitted).

In *Miller*, the Missouri Supreme Court was called upon to interpret the term "sell," the defendant having been charged with selling "moonshine". 300 S.W. at 766. Pursuant to § 4499, RSMo 1929, it was a felony to:

> manufacture, make, or ferment, by any process whatever, or *sell*, give away, or otherwise unlawfully dispose of any 'moonshine,' 'hootch,' 'corn whiskey,' or other intoxicating liquor whatsoever, the drinking of any of which shall cause the death of another, or shall cause the death of another, or shall cause another to become blind, insane, paralyzed, or violently mad.

(Emphasis added.) The information charged that the defendant " 'did sell, barter, and trade' three pints of moonshine for an automobile tire." *Id.* at 767. The defendant claimed that the information was deficient because it did not allege a criminal offense in that, in charging him with exchanging "moonshine for an automobile tire," it did not charge him with selling moonshine in that the statutory term "sell" was not intended to include bartering and trading. *Id.*

The Miller Court rejected the narrow definition of "sell" urged by the defendant and gave it a broader definition, defining it as "[t]o transfer property for a consideration." *Id.* In ruling against the defendant, the Court held that:

> the Legislature intended to use the word "sell" in its broad sense, so as to include

a disposition for any consideration. We cannot assume that the lawmakers intended to give the word a meaning which would defeat the purpose of the act.

*Id.* at 767. The rationale of *State v. Miller* applies here. It is clear that, in drafting § 569.080.1(2), the Legislature intended to use the word "sell" in its broad sense, meaning the exchange of property for any sort of valuable consideration, in that the restricted sense proposed by the appellant would wholly defeat the purpose of the statute.

 Here, the evidence is undisputed that the appellant transferred the physical possession of the Maxima to Jackson for $800. This then would be sufficient for the jury to infer that the appellant was guilty, as charged, of "selling" the Maxima to Jackson, without Tolson's and Nash's consent, in violation of § 569.080.1(2). Hence, we do not find substantial grounds on the face of the appellant's claim in this point for us to believe that the trial court committed plain error and, therefore, we decline plain error review.

Point denied.

## II.

 In Point II, the appellant claims that the trial court plainly erred by failing to, *sua sponte,* declare a mistrial after Tolson testified concerning inadmissible evidence of the appellant's bad character, that he had been warned "to be careful around" the appellant. The appellant concedes that he did not properly preserve this claim of error for appellate review because he failed to object at trial to the allegedly impermissible testimony. *State v. Brown,* 58 S.W.3d 649, 652–53 (Mo.App. 2001). As in Point I, the appellant seeks plain error review in this point, under Rule 30.20. Inasmuch as we do not find, for the reasons discussed, *infra,* substantial

grounds on the face of the appellant's claim for us to believe that the trial court committed evident, obvious, and clear error resulting in manifest injustice to the appellant, we decline plain error review.

Tolson testified, when asked whether he suspected that the appellant was somehow involved in the disappearance of the Maxima: "Yes, I did, because I had spoken to someone at the garage, and they informed me that I probably needed to be careful around him." The appellant contends that Tolson' response constituted inadmissible evidence of uncharged misconduct of the appellant.

 The general rule concerning the admission of evidence of uncharged crimes, wrongs, or acts is that evidence of prior uncharged misconduct is inadmissible for the purpose of showing the propensity of the defendant to commit such crimes. *State v. Carr,* 50 S.W.3d 848, 854 (Mo.App.2001). If, however, evidence of prior crimes or misconduct is both logically and legally relevant to prove the charged crime, and not just the propensity of the defendant to commit such crimes, it is admissible. *Id.* The admission of evidence only violates the general rule as to uncharged crimes evidence if it shows that the defendant has committed, been accused of, been convicted of or definitely associated with another crime or crimes. *Id.* Vague references are not clear evidence associating a defendant with other crimes. *Id.*

Here, the evidence in question did not constitute evidence of uncharged misconduct in that the witness' challenged remark was vague and indefinite, and did not refer to specific conduct. *State v. Boulware,* 923 S.W.2d 402, 406 (Mo.App.1996) (stating that it was not plain error for the trial court to fail to declare a mistrial, *sua sponte,* over a witness' remark about the

defendant's parole officer, because the remark was vague, indefinite, and did not refer to a specific crime). Hence, we do not find substantial grounds on the face of the appellant's claim for us to believe that the trial court committed plain error and, therefore, decline plain error review.

Point denied.

## Conclusion

The judgment of the circuit court, convicting the appellant of tampering in the first degree, § 569.080.1(2), is affirmed.

HOWARD and NEWTON, JJ., concur.