STATE of Missouri, Appellant,

v.

Steven J. SEUFERLING, Respondent.

No. WD 67866.

Missouri Court of Appeals,
Western District.

Nov. 20, 2007.

J. Bartley Spear, Jr., Maysville, MO, for appellant.

John G. Gromowsky, Kansas City, George A. Pickett, Plattsburg, MO, for respondent.

Before VICTOR C. HOWARD, Chief Judge, PATRICIA BRECKENRIDGE,[1] Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

The State of Missouri appeals the trial courts order granting Respondent Steven J. Sueferling's motion to suppress evidence and its judgment acquitting Respondent of the misdemeanors of driving while intoxicated, § 577.010,[2] resisting arrest, § 575.150, and assault of a law enforcement officer in the third degree, § 565.083. Because the constitutional provision against double jeopardy precludes retrial of Respondent on these charges, we must dismiss the appeal.

Respondent was tried by the court before the Hon. Daniel L. Chadwick in the Circuit Court of DeKalb County on October 7, 2005. The State first presented the testimony of Andy Clark, a police officer for the city of Cameron, Missouri, who observed Respondent commit several traffic violations while following him for several blocks within the Cameron city limits. Officer Clark followed Respondent outside the city limits into DeKalb County when Respondent did not stop in response to the officer's emergency lights and siren. The vehicle ultimately stopped in a private driveway, and Officer Clark made contact with Respondent and eventually subdued Respondent after a struggle.

The State also presented the testimony of Paul Kimball, a corporal with the Missouri State Highway Patrol who was assigned to DeKalb County and who responded to the location where Officer Clark had detained Respondent. Corporal Kimball did not observe Respondent driv-

---

1. Breckenridge, J., was a member of this Court at the time this case was submitted. She was subsequently appointed a judge of the Supreme Court of Missouri but has been reassigned to this Court as a special judge for the purpose of disposition of this case.

2. All statutory citations are to RSMo 2000 unless otherwise noted.

ing the vehicle but questioned him briefly and arrested him for driving while intoxicated when he smelled intoxicants on Respondents breath. Corporal Kimball transported Respondent to the Cameron Police Department and conducted field sobriety tests, which he believed Respondent failed, and a breathalyzer test, which showed a blood alcohol level of 0.148 percent.

During the course of the trial, Respondent made timely objections to the admissibility of any evidence that was obtained after Officer Clark left the Cameron city limits and requested that the court suppress that evidence.[3] He argued that the State failed to establish sufficient grounds to show that Officer Clark was allowed to follow Respondent outside the city limits under the Cameron Police Departments pursuit policy as authorized by § 544.157. In addition, Respondent objected to Officer Clark's testimony based on his failure to comply with the Cameron Police Departments pursuit policy as required by § 544.157. He asserted that any evidence obtained after Officer Clark left his jurisdiction was the result of an illegal seizure. After hearing arguments by both parties, the court took the objections under advisement and allowed the State to continue presenting its case, subject to Respondent's continuing objections. At the close of all evidence, the court took all matters under advisement, including Respondent's motion to suppress.

On December 31, 2006, which was a Sunday and the last day of Judge Chadwick's term of office, the court issued its judgment of acquittal on all charges. In the first paragraph of the judgment, the court granted Respondent's oral motion to suppress. Neither party requested findings of fact, and the court did not issue any. The court stated only that it found "that evidence presented by Plaintiff was obtained in violation of Defendant's Constitutional and statutory rights" and "that the evidence presented by Plaintiff fails to prove beyond a reasonable doubt that defendant committed the offenses charged in the Information." The judgment was filed by the court clerk on January 2, 2007. The State filed its notice of appeal on January 4, 2007.

The State asserts three points of error. The first two points concern the trial court's entry of the judgment of acquittal, and the third point concerns the propriety of the suppression of evidence on the merits. Respondent has filed a motion to dismiss this appeal for lack of jurisdiction, which was taken with the case. He asserts that the trial court's judgment of acquittal precludes the State from appealing the judgment or the ruling on the motion to suppress because a reversal would subject Respondent to double jeopardy. The State concedes that the double jeopardy clause precludes this appeal but only if we find that the trial court had authority to enter the judgment of acquittal, relying on its arguments from Points I and II of its brief.

The state is permitted to appeal an order granting a motion to suppress evidence, § 547.200.1(3), and must file the notice of appeal within five days of the entry of the trial courts order. § 547.200.4. However, § 547.200.2 "prohibits any appeal where the possible outcome of such an appeal would result in double jeopardy for the defendant." *State v. Shaon*, 145 S.W.3d 499, 503 (Mo.App. W.D.2004) (quoting § 547.200.2). Jeopardy attaches when "the defendant has been put to trial before the trier of fact, whether the trier of fact be a jury or a judge." *State v. Bibb*, 922 S.W.2d 798, 801 (Mo.App. E.D.1996) (citing

---

3. It does not appear that Respondent filed a pretrial motion to suppress.

*Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975)). "The constitutional protection provided by the double jeopardy clause prohibits (1) second prosecution for the same offense after acquittal; (2) second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." *Shaon,* 145 S.W.3d at 503 (internal quotation omitted).

In Point I, the State contends that the trial court did not have authority to enter the judgment on a Sunday, relying on § 476.250, and that the judgment was invalid because it was filed after the judge's term of office had expired.

■ As noted above, Judge Chadwick heard all evidence in the case, took the case and the motion to suppress under advisement, and subsequently issued his ruling on the motion and judgment of acquittal on the last day of his term of office. We first note that the date on which the clerk entered the judgment does not affect the judgment's validity, as the date of the judgment itself controls. *State v. Dailey,* 53 S.W.3d 580, 584 (Mo.App. W.D.2001) ("A judgment derives its force from the rendition of the court's judicial act and not from the ministerial act of its entry upon the record."). Therefore, the judgment was rendered on December 31, 2006, during Judge Chadwick's term of office, and was not invalid as having been entered after his term expired.

■ We next turn to the question raised by the judgment's entry on Sunday. Section 476.250 provides, in pertinent part, that "[n]o court shall be open or transact business on Sunday, unless it be for the purpose of receiving a verdict or discharging a jury; ... but this section shall not prevent ... the issuing and service of such orders as exigencies may require." Thus, § 476.250 contemplates the issuance of orders or judgments on a Sunday when "exi-gencies may require." The State relies on *Thompson v. Sanders,* 334 Mo. 1100, 70 S.W.2d 1051 (Mo.1934), in support of its position. In that case, the Court held that a judgment entered on a Sunday was "absolutely void." *Id.* at 1054. However, the *Thompson* court was interpreting a prior version of what is now § 476.250, § 1863, RSMo 1929. *Id.* The statute at that time provided:

> No court shall be open or transact business on Sunday, unless it be for the purpose of receiving a verdict or discharging a jury; and every adjournment of a court on Saturday shall always be to some other day than Sunday, except such adjournment as may be made after a cause has been committed to a jury.

§ 1863, RSMo 1929; *see also Thompson,* 70 S.W.2d at 1055. As can be seen, the statute did not include the "exigencies" language that appears in § 476.250 today. Therefore, the State's reliance on *Thompson* is misplaced.

■ When we are called upon to interpret a statute, we try "to ascertain the intent of the legislature." *State v. Harris,* 156 S.W.3d 817, 822 (Mo.App. W.D.2005). In doing so, we must "give meaning to all of the terms used in a statute." *Id.*

> Words employed in a statute are given their usual and ordinary meaning unless the legislature itself has defined a particular term or phrase. The statutory definition should be followed in the interpretation of the statute to which it relates and is intended to apply and supersedes the commonly accepted dictionary or judicial definition and is binding on the courts.

*Id.* (quoting *State ex rel. Nixon v. Estes,* 108 S.W.3d 795, 798 (Mo.App.2003)).

The term "exigencies" is not defined in § 476.250, and we have not found it defined in case law for purposes of that

statute. Accordingly, we must give it its plain and ordinary meaning. "Exigencies" is the plural of "exigency," which is commonly defined as "1 .... urgency; imperative need or want; ... 2. a situation which demands immediate action, supply, or remedy; ... 3. pressing needs; demands; requirements." *Webster's New Twentieth Century Dictionary* 641 (2nd ed.1979).

■ "Because jeopardy attaches before the judgment becomes final, the constitutional protection also embraces the defendants valued right to have his trial completed by a particular tribunal." *Arizona v. Washington,* 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978) (internal quotation omitted). In Missouri, Rule 32.15 allows a successor judge to perform duties in a criminal case after the judge who tried the case leaves office only "after a verdict is returned or findings of fact are filed," neither of which had occurred in the case at bar. For these reasons, Missouri courts have held that it is reversible error for a judge other than the one who heard the evidence at trial to rule on a motion to suppress or motion for acquittal, *State v. Davis,* 564 S.W.2d 876, 877–78 (Mo. banc 1978), or to proceed with sentencing where there has been no determination of guilt. *State v. Hopkins,* 573 S.W.2d 744, 744–45 (Mo.App. S.D.1978) (relying on civil counterpart to Rule 32.15); *cf. State v. Chapman,* 704 S.W.2d 674, 676 (Mo.App. S.D.1986) (successor judge authorized to proceed with sentencing where judge who heard evidence entered finding of guilty). In light of this applicable law, since Judge Chadwick had not ruled on Respondent's case earlier, there was an urgent need for him to act on Sunday, his last day in office. In other words, there were exigent circumstances that required him to enter judgment in this case on a Sunday, and he did not violate § 476.250 in

doing so. Therefore, the judgment is not void for that reason.

■ In Point II, the State argues that the court had no authority to enter the judgment of acquittal simultaneously with its order granting Respondent's motion to suppress evidence because it did not allow the State five days to appeal the ruling as required by § 547.200. Neither party cites any Missouri case addressing this situation, and we found none in our independent research. However, this Court has referred to the preclusive power of a judgment of acquittal following a suppression of evidence in a defendant's favor.

In *State v. Shaon,* 145 S.W.3d 499 (Mo. App. W.D.2004), as here, the trial court heard the defendant's motion to suppress evidence on the same day as the trial and heard all evidence in the case but did not rule on the motion at that time. *Id.* at 502. Several weeks later, the court made a docket entry that the cause was "submitted for decision" and sustained the motion. *Id.* Unlike the case *sub judice,* the trial court in *Shaon* continued the matter "for further order" until a week later, and the state filed an interlocutory appeal of the ruling on the motion to suppress before the court entered any further orders. *Id.* This Court rejected the defendant's double jeopardy argument, noting that "[a]fter sustaining the motion to suppress, the trial court did *not* proceed to rule on [the defendants] guilt" but, instead, "continued the balance of the trial ... to hear final arguments and for further order." *Id.* at 503 (emphasis in original). We concluded that "no interest protected by the double jeopardy clause [was] implicated" *because "the trial court did not make a determination of [the defendants] guilt." Id.* (emphasis added); *see also State v. Zimmerman,* 941 S.W.2d 821, 826 (Mo.App. W.D. 1997) (holding that "double jeopardy would not be implicated by remanding ... for a

new trial" because there was "no final verdict of acquittal," stating that "[d]ouble jeopardy only attaches when there is a final verdict of acquittal").

Other states with similar statutes allowing the state to appeal rulings granting motions to suppress have addressed the situation in the case at bar. In *State v. Fraternal Order of Eagles Aerie 0337 Buckeye*, 58 Ohio St.3d 166, 569 N.E.2d 478 (1991), the parties submitted a case on stipulated facts, and the trial court subsequently issued a judgment of acquittal which contained its ruling granting the defendant's motion to suppress. *Id.* at 480–81. As here, the state argued that the trial court erred in doing so because it denied the state its statutory right to appeal the ruling on the motion to suppress. *Id.* The Supreme Court of Ohio agreed that the trial court had effectively denied the state its statutory right to appeal by entering the orders together and held that this was error. *Id.* at 481. However, the court stated that it would "not set aside the judgment of acquittal" and affirmed the appellate court's dismissal of the appeal because the "defendant cannot twice be put in jeopardy." *Id.*

In *State v. Vaida*, 1 Neb.App. 768, 510 N.W.2d 389 (Neb.Ct.App.1993), the Nebraska Court of Appeals took a similar approach to that of the Ohio court in *Fraternal Order*. The defendant objected to evidence at trial, and the court initially overruled the defendant's objections but took the case under advisement after all evidence was presented. *Id.* at 391. The court subsequently issued a judgment in which it reconsidered the objections and granted the motion to suppress then acquitted the defendant because the remaining evidence did not support a finding of guilt beyond a reasonable doubt. *Id.* The court noted that "the trial courts action in this case, suppressing the contested state-

ment after submission of all the evidence, denies the State its statutory right to appeal," *id.* at 392, but held, nevertheless, that a second trial was barred by the double jeopardy clause because the defendant had been acquitted, relying on *Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978). *Id.* at 394.

In *Sanabria*, the defendants moved to exclude certain evidence at the close of the government's case. 437 U.S. at 57, 98 S.Ct. at 2175. The trial court initially denied the motion but then reversed itself and granted the motion after the close of the defendants' evidence based on supposed errors in the indictment. 437 U.S. at 58–59, 98 S.Ct. at 2175–76. As a result of this ruling, the trial court immediately granted a motion to acquit one of the defendants due to a lack of sufficient evidence. 437 U.S. at 59, 98 S.Ct. at 2176. The Supreme Court held that the appellate court lacked jurisdiction to hear the governments appeal because a judgment of acquittal had been entered. 437 U.S. at 78, 98 S.Ct. at 2186. The Court explained:

> That "[a] verdict of acquittal ... [may] not be reviewed ... without putting [the defendant] twice in jeopardy, and thereby violating the Constitution," has recently been described as "the most fundamental rule in the history of double jeopardy jurisprudence." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977), quoting *United States v. Ball*, 163 U.S. 662, 671, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). The fundamental nature of this rule is manifested by its explicit extension to situations where an acquittal is "based upon an egregiously erroneous foundation." *Fong Foo v. United States*, 369 U.S. 141, 143 [82 S.Ct. 671, 672, 7 L.Ed.2d 629] (1962). . . . Thus *when a defendant has been acquitted at trial he may not be retried on the*

*same offense, even if the legal rulings underlying the acquittal were erroneous.*

437 U.S. at 64, 98 S.Ct. at 2178–79 (emphasis added). In other words, the Court concluded, "The trial court's rulings here led to an erroneous resolution in the defendant's favor on the merits of the charge. As *Fong Foo v. United States* makes clear, the Double Jeopardy Clause *absolutely bars* a second trial in such circumstances." 437 U.S. at 78, 98 S.Ct. at 2186 (emphasis added).

In *Fong Foo*, a federal appellate court had granted a petition for writ of mandamus on the ground that the trial court had no power to direct a verdict of acquittal based on supposed prosecutorial misconduct and lack of credibility before the government had finished presenting its main case. 369 U.S. 141, 142, 82 S.Ct. 671, 671, 7 L.Ed.2d 629 (1962). The Supreme Court reversed, holding that the double jeopardy clause "was violated when the Court of Appeals set aside the judgment of acquittal and directed that petitioners be tried again for the same offense." 369 U.S. at 143, 82 S.Ct. at 672. The Court explained:

The petitioners were tried under a valid indictment in a ... court which had jurisdiction over them and over the subject matter. The trial did not terminate prior to the entry of judgment.... It terminated with the entry of a final judgment of acquittal as to each petitioner. The Court of Appeals thought, not without reason, that the acquittal

was based upon an egregiously erroneous foundation. Nevertheless, "[t]he verdict of acquittal was final, and could not be reviewed ... without putting [the petitioners] twice in jeopardy, and thereby violating the Constitution." *United States v. Ball*, 163 U.S. 662, 671, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 [ (1896).]

*Id.; see also Arizona*, 434 U.S. at 503, 98 S.Ct. at 829 ("The public interest in the finality of criminal judgments is so strong that an acquitted defendant may not be retried even though the acquittal [is] based upon an egregiously erroneous foundation." (quoting *Fong Foo*, 369 U.S. at 143, 82 S.Ct. at 672)).

*Sanabria, Fong Foo,* and *Arizona* are clear that when a trial court enters a final judgment of acquittal, the State is barred from appealing either the judgment itself or any of the courts actions leading to that judgment, no matter how erroneous those actions may have been.[4] As stated by the New Mexico Supreme Court after reviewing those cases:

Although ... the rights secured by the Double Jeopardy Clause are not absolute, they come very close to being so treated ... where the trial court has entered a judgment of acquittal. In that case the defendant's interest in being free of governmental oppression is at its zenith, whereas the government, having had one "full and fair opportunity" to vindicate society's interest, is denied another.

4. A narrow exception to this rule exists when the court enters a judgment of acquittal notwithstanding a jury verdict of conviction because no further proceedings would be required if such an acquittal were reversed on appeal. *See State v. Couch*, 793 S.W.2d 599, 601 (Mo.App. E.D.1990) ("[T]he Double Jeopardy Clause" bars a postacquittal appeal by the prosecution not only when it might result in a second trial, but also if reversal would

translate into "further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged." (quoting *Smalis v. Pennsylvania*, 476 U.S. 140, 145–146, 106 S.Ct. 1745, 1749, 90 L.Ed.2d 116, 122 (1986))); *see also State v. West*, 939 S.W.2d 399, 401 (Mo.App. W.D.1996); *State v. Smith*, 81 S.W.3d 657, 659 n. 2 (Mo.App. S.D.2002); *State v. Magalif*, 131 S.W.3d 431, 434 (Mo.App. W.D.2004).

*County of Los Alamos v. Tapia,* 109 N.M. 736, 790 P.2d 1017, 1023–24 (1990) (quoting *Arizona,* 434 U.S. at 505, 98 S.Ct. at 830) (internal citations omitted). We agree with the reasoning in *Fraternal Order* and *Vaida* and hold that, although the timing of the trial court's orders effectively denied the State its statutory right to appeal, the double jeopardy clause precludes any appellate review of the judgment of acquittal and ruling on the motion to suppress.

The appeal is dismissed.

All concur.