

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| DAVID L. KAERCHER, | ) | No. ED111737 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of Franklin County |
| v. | ) | Cause No. 22AB-AC01132 |
| | ) | |
| DIRECTOR OF REVENUE, | ) | Honorable Mark E. Brinkmann |
| | ) | |
| Respondent. | ) | Filed: December 26, 2023 |

## Introduction

David Kaercher ("Appellant") appeals from the trial court's judgment sustaining the revocation of his driving privileges. Appellant argues the trial court erred in admitting State's Exhibit A, certified records of the Department of Revenue, because the Director of Revenue ("Director") failed to lay the proper foundation for its admission. Appellant further argues the trial court erred in finding that Appellant was under arrest at the time a state trooper read him the implied consent warning. We affirm the judgment of the trial court.

## Factual and Procedural History

### Facts

On June 25, 2022, the Missouri State Highway Patrol ("MSHP") dispatched a trooper to a single-vehicle crash on Interstate 44 in Franklin County, Missouri. Appellant, driving at

1

approximately 70 miles per hour, lost control of his vehicle and struck the concrete median on one side of the interstate, traveled across three lanes of traffic, exited the roadway on the other side, and struck a rock embankment. At the scene, the trooper administered a portable breath test, which revealed Appellant's blood alcohol content was 0.217, nearly three times the legal limit.

An ambulance transported Appellant to the hospital. Around that time, MSHP dispatched Trooper B.G. to the hospital to meet with Appellant.[1] After arriving at the hospital, Trooper B.G. spoke with Appellant and noticed a strong odor of alcohol on Appellant's breath. Appellant mumbled, his speech was slurred, and at times he was incoherent. When Trooper B.G. asked how much alcohol Appellant had consumed, Appellant admitted he had "about half a dozen" beers that afternoon. After observing these signs of intoxication, Trooper B.G. asked Appellant to perform field sobriety tests. He did not ask Appellant to perform some tests requiring physical activity because Appellant would not have been able to safely perform them. Appellant refused the field sobriety tests.

Trooper B.G. then advised Appellant he was under arrest for driving while intoxicated and advised him of his *Miranda* rights. Appellant indicated he understood his rights. Trooper B.G. did not physically restrain Appellant since he was in a hospital bed. At the time of the arrest, Trooper B.G. read Appellant the implied consent warning directly off the Alcohol Influence Report, which again informed Appellant, "You are under arrest . . .." Trooper B.G. then asked Appellant to have his blood drawn to determine its alcohol content and informed Appellant his refusal to consent to the blood draw would result in revocation of his driver's license for one year. Appellant refused the blood test. Trooper B.G. was at the hospital for 25 minutes before he placed Appellant under

---

[1] The personal identifying information of witnesses has been omitted pursuant to RSMo § 509.520 (Supp. 2023).

arrest because he was attempting to complete his investigation while hospital personnel provided medical care to Appellant.

Due to Appellant's refusal to consent to a chemical test, the Director revoked his driving privileges for a period of one year pursuant to Section 577.041.[2]

*Procedural History*

On July 1, 2022, Appellant filed a petition for review of his license revocation for failing to submit to a chemical test and a request for a stay. On January 20, 2023, the trial court held a bench trial on Appellant's petition.

At the beginning of trial, the Director offered State's Exhibit A, the Department of Revenue packet containing, among other documents, certified copies of the notice of revocation, the Alcohol Influence Report, and the MSHP reports. Appellant objected to the admission of Exhibit A on the grounds that the records were not properly certified. Appellant argued the signature on the certification letter must be an original signature and not a copy of the signature. The trial court admitted Exhibit A subject to further consideration of the certification issue.

The trial court sustained the revocation of Appellant's driving privileges. Specifically, the trial court found: (1) Appellant was under arrest for Driving While Intoxicated; (2) At the time of arrest, Appellant was in a hospital bed being attended to by hospital personnel; (3) Trooper B.G. exercised his discretion not to physically restrain Appellant so as not to interfere with medical personnel who were attending to Appellant in the emergency room; and (4) Appellant did not attempt to the leave the premises and submitted to Trooper B.G.'s authority. Also, the trial court found that "the copy of the originally signed certification complies with the requirements of §

_____

[2] Unless otherwise indicated, all statutory references are to RSMo (2000) as amended.

3

302.312, RSMo., that Exhibit A was properly certified, and Exhibit A was properly admitted into evidence." Appellant now appeals.

**Discussion**

Appellant raises two points on appeal. In his first point, Appellant argues the trial court erred in admitting Exhibit A because the Director did not lay the proper foundation for its admission in that the Director failed to comply with Section 302.312. In his second point, Appellant argues he was not under arrest at the time Trooper B.G. read the implied consent warning because Appellant was unrestrained in a hospital bed and did not submit to the trooper's authority.

<u>Point I</u>

In his first point, Appellant argues the trial court erred in admitting Exhibit A because the Director did not lay the proper foundation for its admission in that the Director failed to comply with Section 302.312.

A trial court's decision to admit evidence is reviewed for abuse of discretion. *Wilmoth v. Dir. of Revenue*, 669 S.W.3d 102, 108 (Mo. banc 2023). A trial court abuses its discretion "when its ruling is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Id.* (quoting *Lozano v. BNSF Ry. Co.*, 421 S.W.3d 448, 451 (Mo. banc 2014)) (internal quotation marks omitted).

Section 302.312 provides:

> Copies of all papers, documents, and records lawfully deposited or filed in the offices of the department of revenue or the bureau of vital records of the department of health and senior services and copies of any records, properly certified by the appropriate custodian or the director, shall be admissible as evidence in all courts of this state and in all administrative proceedings.

Section 302.312.1.

4

Appellant argues Exhibit A was not properly certified because the certification letter attached to Exhibit A was a copy not bearing the original signature of the Director or the custodian of records. For that reason, Appellant argues the trial court improperly admitted Exhibit A.

We hold the trial court did not abuse its discretion in admitting Exhibit A. "Proper language in the letter of certification and the signature of the custodian of records are the only requirements to 'properly certify' a document." *Connelly v. Dir. of Revenue*, 291 S.W.3d 318, 321 (Mo. App. E.D. 2009). The General Assembly has defined "signature," as applicable here, as "any method determined by the director of revenue for the signing, subscribing or verifying of a record, report, application, driver's license, or other related document that shall have the same validity and consequences as the actual signing by the person providing the record, report, application, driver's license or related document." Section 302.010(23).

When interpreting a statute, we are to ascertain the intent of the legislature from the plain language. *State v. Harris*, 156 S.W.3d 817, 822 (Mo. App. W.D. 2005). "In determining the legislature's intent, we are required to consider and give meaning to all of the terms used in a statute." *Id.* "Words employed in a statute are given their usual and ordinary meaning unless the legislature itself has defined a particular term or phrase." *Id.* (quoting *State ex rel. Nixon v. Estes*, 108 S.W.3d 795, 798 (Mo. App. W.D. 2003)). "The statutory definition should be followed in the interpretation of the statute to which it relates and is intended to apply and supersedes the commonly accepted dictionary or judicial definition and is binding on the courts." *Id.*

Applying the statutory definition of "signature," we conclude Section 302.010(23) does not require the Director to submit a certification letter to the trial court bearing the original signature of the Director or the custodian of records. The plain language of the statutory definition broadly allows for "any method" determined by the Director for signing, subscribing, or verifying

a record "that shall have the same validity and consequences as the actual signing." The definition explicitly contemplates "any method" of signing, apart from "the actual signing," and does not require an original signature.

Appellant directs us to no case, and we can find none, in which a court has interpreted Section 302.312 to require an original signature for proper certification of documents. Particularly in light of the definition of "signature" in Section 302.010(23), we decline to read an original-signature requirement into the statute. *See Connelly*, 291 S.W.3d at 321 (declining to read notarization requirement into Section 302.312). The trial court did not abuse its discretion in admitting Exhibit A.

Accordingly, Point I is denied.

Point II

In his second point, Appellant argues he was not under arrest at the time Trooper B.G. read him the implied consent warning because Appellant was unrestrained in a hospital bed and did not submit to the trooper's authority.

"[I]n a court-tried case, the circuit court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Wilmoth*, 669 S.W.3d at 108. "The evidence and reasonable inferences drawn therefrom are viewed in the light most favorable to the trial court's judgment and all contrary evidence and inferences are disregarded." *Gallagher v. Mo. Dep't of Revenue*, 604 S.W.3d 372, 375 (Mo. App. E.D. 2020) (quoting *Boggs v. Dir. of Revenue*, 564 S.W.3d 693, 697 (Mo. App. W.D. 2018)). While we defer to the trial court's factual findings, the issue of whether the defendant was arrested under the facts found by the trial court is a question of law this Court reviews *de novo*. *Haffner v. Dir. of Revenue*, 602 S.W.3d 268, 272 (Mo. App. E.D. 2020).

Section 544.180 states, "An arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of the officer, under authority of a warrant or otherwise." Generally, merely informing someone he is under arrest is insufficient to effectuate an arrest. *Smither v. Dir. of Revenue*, 136 S.W.3d 797, 799 (Mo. banc 2004). "[P]roof of physical restraint or the suspect's submission also is required to effectuate [an] arrest." *Id.* That said, "in the case of an injured suspect who is already immobilized or incapacitated, it is impractical to require officers to physically restrain the suspect further." *Id.* (citing *Saladino v. Dir. of Revenue*, 88 S.W.3d 64, 68–69 (Mo. App. W.D. 2002)).

A person submits to the authority or custody of an officer when "he is told that he is under arrest and assents to the directions of the arresting officer without attempting to leave the premises." *Haffner*, 602 S.W.3d at 274 (quoting *Minor v. Dir. of Revenue*, 136 S.W.3d 825, 827 (Mo. App. E.D. 2004)) (internal quotation marks omitted). Also, "arrest occurs when surrounding circumstances are such that a reasonable person would believe that he or she is not free to leave; that is, when her person is seized by law enforcement authorities." *Haffner*, 602 S.W.3d at 274 (quoting *Peters v. Dir. of Revenue*, 35 S.W.3d 891, 896 (Mo. App. S.D. 2001)) (internal quotation marks omitted).

Trooper B.G. arrested Appellant. First, Appellant already was immobilized or incapacitated, rendering any further physical restraint of Appellant unnecessary. Appellant's injuries from the high-speed crash were sufficient to require his transport by ambulance to the hospital emergency room and treatment by hospital staff. When Trooper B.G. encountered him, Appellant was lying in a hospital bed in the emergency room being treated by medical staff. Due to his injuries, Appellant was unable to safely perform at least some field sobriety tests.

The trial court found Trooper B.G. arrested Appellant and exercised his discretion not to physically restrain Appellant while he was in a hospital bed being treated by medical personnel. The trooper did so to avoid interfering with Appellant's medical care. We defer to the trial court's factual findings. *See Haffner*, 602 S.W.3d at 272. Accordingly, substantial evidence supported the trial court's finding that, due to his injuries, no additional restraint was necessary to arrest Appellant. *See id.* at 273–74. Appellant conceded as much at oral argument pursuant to *Smither*, 136 S.W.3d at 799.

Second, Appellant also submitted to Trooper B.G.'s authority. Although Appellant refused the sobriety tests and a blood draw and opted not to answer some of Trooper B.G.'s questions, any reasonable person in Appellant's circumstances would not have felt free to leave. *See Haffner*, 602 S.W.3d at 274. Trooper B.G. informed Appellant twice and in no uncertain terms that he was under arrest. The trooper advised Appellant of his *Miranda* rights, and Appellant indicated he understood his rights. Trooper B.G. persisted in exercising his authority over Appellant by reading him the implied consent warning and informing Appellant he would have his license revoked by failing to comply. *See id.* at 274–75.

The trial court found that Appellant did not attempt to leave the premises and submitted to Trooper B.G.'s authority. Substantial evidence supported those findings.

We conclude, as did the trial court, that Appellant was arrested both by physical restraint and by submitting to the arresting officer's authority for purposes of Section 544.180. Point II is denied.

## Conclusion

For these reasons, we affirm the judgment of the trial court.

_____
Cristian M. Stevens, J.

Robert M. Clayton III, P.J., and
Philip M. Hess, J., concur.