THE STATE, *Appellant*, v. HONIG.

1. **Larceny**: PLEADING, CRIMINAL: JEOFAILS. An indictment charged the defendant with receiving the goods of one Hale, " before then feloniously stolen, taken and carried away from *another;*" but omitted to give the name of the person from whom they were stolen. *Held*, that as it did not appear that the defendant was prejudiced by the omission, the objection was not well taken after verdict.

2. ———: RECEIVER OF STOLEN GOODS. One cannot at the same time be a principal in a larceny and in the legal sense a receiver of the stolen property.

3. **Practice, Criminal**: OPENING AND CONCLUDING ARGUMENTS. The provision of the Criminal Practice Act that " unless the case be submitted without argument, the counsel for the prosecution shall make the opening argument, the counsel for the defendant shall follow, and the counsel for the prosecution shall conclude," is mandatory. The prosecuting counsel must not be allowed to make the concluding unless he also makes the opening argument.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*D. H. McIntyre*, Attorney General, for the State.

*Joseph G. Lodge* for respondent.

PHILIPS, C.—The respondent was indicted and convicted for receiving stolen property. The following is the indictment:

" The grand jurors of the State of Missouri, within and for the body of the city of St. Louis, now here in court, duly empanelled, sworn and charged, upon their oath present, that Daniel A. Honig, late of the city of St. Louis, on the 20th day of October, in the year of our Lord 1877, at the city of St. Louis aforesaid, with force and arms, $100 in good and lawful money of the United States of America, of the value of $100, of the goods, property and chattels of Thomas B. Hale, before then feloniously stolen, taken and carried away *from another*, feloniously did receive and have, he, the said Daniel A. Honig, then and there well knowing

the said property, goods and chattels to have been so felo-
niously stolen, taken and carried away as aforesaid, against
the peace and dignity of the State, and contrary to the
form of the statute in such case made and provided."

The facts in brief are, that the defendant, Honig, had
a livery stable in St. Louis and had an organized band of
swindlers and thieves in his employ, of which he was chief.
Their principal prey was unsuspecting, simple-minded
strangers.  On this occasion one Hale, from Arkansas, fell
into their hands.  One of them named Baker told Hale
that he had been trying all ' day to buy a span of horses
from one Zumbunsen, said to be a "Dutchman," near by,
who feigned to be unable to speak English.  Honig was
present when Baker told Hale he would give him $10 if he
would make the purchase for him.  The horses were in
fact Honig's, and Zumbunsen was in Honig's employ and
*particeps criminis* in the transaction.  Hale was persuaded
to buy the horses at $150 upon the understanding that
Baker would return the money and take the horses.  Zum-
bunsen and Hale went into defendant's office in the stable
to have defendant's clerk make out the bill of sale and to
consummate the purchase.  Baker and Honig were at or
near the door and manifestly were cognizant of and manip-
ulating the swindle.  Baker had bank bills in his hands
and assured Hale he would hand the money over to him as
soon as he accomplished the sale.  Hale had only $100 and
put that down on the desk.  He then turned to Baker a
few feet off to ascertain his name to put in the bill of sale.
On Baker's suggestion that the bill of sale must be made
out in Hale's name, the latter's suspicions of fraud were
excited, and he turned to get his money.  But when he laid
the money down on the desk, and this colloquy occurred,
Honig appeared at the desk, and the clerk pushed the money
over to him and he took it.  When Hale turned to get his
money it was gone, and he was unable to learn who had it.
Honig then told Hale he could have the horses by paying
the remaining $50.  This of course was declined, as he did

not intend to buy the horses for himself and had not in fact, voluntarily parted with his money.

On this state of the evidence the defendant asked the court to instruct the jury to acquit as the evidence did not sustain the indictment, which the court refused.

The respondent did not introduce any testimony on his behalf, and the above was in substance all the evidence in the case.

The court, of its own motion, among others, gave the following instruction to the jury:

"If, from the evidence, you believe and find that the money mentioned in the indictment was by some one, other than the defendant, actually, feloniously stolen, taken and carried away from Thomas B. Hale, with the intent, on the part of the thief, actually to convert it to his own use and make it his property, without the consent of the true owner of said money, that said money was the property of said Hale, and was of the value of $20 or more; and after it had, by some one other than the defendant, been thus stolen, taken and carried away, the defendant did feloniously take and receive it into his possession, and at the time he did so he knew it to be stolen money, you will find him guilty." To the giving of this instruction respondent then and there excepted.

After the court had instructed the jury as to the law, the case was not submitted to the jury without argument; but on the contrary, an hour was asked and allowed to each side to argue the case. Mr. E. A. Noonan, assistant circuit attorney, then arose on behalf of the State, and said: "If the court please: Gentlemen of the jury, I will not argue the case on behalf of the State now. Mr. La Due will do that when he comes to close the case. We rely on the evidence to show the guilt of the defendant under the instructions of the court." This was all that was said by any one representing the State in opening the argument. Counsel for defendant then and there took exception to the refusal of the State to open the case, as required by law, in the

following language: "I take exceptions to the opening, or want of opening, of the argument in this case. It is not. such as is contemplated by the statute, and it is in violation of the rights of defendant, which he here claims. I demand that the prosecution shall open the argument as the statute says it shall."

Circuit Attorney La Due.—" We are willing to risk it."

The Court.—" I will not require the State to open the case further."

The jury returned a verdict of guilty, and assessed the punishment at three years in the penitentiary. On appeal to the court of appeals the judgment of the court below was reversed and the cause remanded. Thereupon the State brings the case here by appeal.

As this defendant so justly deserved to be punished for his criminal part in this transaction, it is unfortunate to the public that justice should fail through an improper indictment. But it is of more general importance that one criminal should escape than that the safeguards of legal forms and constituted methods of legal procedure should be broken down and disregarded in his trial.

It is objected to the indictment that it does not give the name of the person from whom the property was stolen.

1. LARCENY: pleading, criminal: jeofails. The indictment was evidently carelessly drawn. Its language is "$100 of the goods, property and chattels of Thos. B. Hale, before then feloniously stolen, taken and carried away from another." It is not apparent that this is a " defect or imperfection " which tended " to the prejudice of the substantial rights of the defendant upon the merits," and the objection is not well taken after verdict.

The court of appeals held in this case, (9 Mo. App. 298,) that one cannot at the same time be " a principal in

2. ——. receiver of stolen goods. the larceny and in the legal sense a receiver of stolen property." With its reasoning I am well satisfied. It is sustained by a great weight of authority. One object in punishing a person as the receiver.

The State v. Honig.

of stolen goods, is to prevent the real thief or taker from getting rid of the visible evidence of his crime by transferring the possession to another, and aiding him thereby in converting the property into another form and lessening the chances of detection. If he is a principal actor in the theft—the actual captor of the property, it is illogical and contradictory to say he has received it from another. In view of the uncontradicted evidence in this case it is remarkable that Honig should have been indicted as the mere receiver of goods stolen by another. He was the organizing, governing and present spirit in the whole scheme and execution. He incited it. He heard and said all that was essential in the plot. He participated in the conversion and as proof conclusive of his actual presence as an aider and abettor at the fact, the moment Hale laid his money down, he appeared within reach to lay his itching fingers on it, as it was shoved across the table by one of his puppets. By all the recognized authorities this made him a joint principal in the theft and in such case " he surely could not be indicted as a receiver." *Regina v. Perkins*, 5 Cox C. C. 554.

The conduct of the prosecuting attorney in refusing to make an opening argument to the jury, is brought to

3. PRACTICE, CRIMINAL: opening and closing arguments. our attention; and though not essential to the determination of this appeal, is an important question in practice. Section 1908, R. S. 1879, declares that " The jury being impanelled and sworn, the trial may proceed in the following order: First, the prosecuting attorney must state the case, and offer the evidence in support of the prosecution; second, the defendant or his counsel may then state his defense and offer evidence in support thereof; third, the parties may then respectively offer rebutting testimony only, unless the court for good reason in furtherance of justice, permit them to offer evidence upon their original case; fourth, the court must instruct the jury in writing, upon all questions of law arising in the case, which are necessary for their information in giving their

verdict; fifth, unless the case be submitted without argument, the counsel for the prosecution shall make the opening argument, the counsel for the defendant shall follow, and the counsel for the prosecution shall conclude the argument."

This section is new and first enacted in 1879. In thus directing the order of trial, the legislature evidently had some definite object in view. In state trials, the common law rules of proceeding were well settled in practice and understood by bench and bar. In prescribing a definite order it must have been in the legislative mind to remedy some supposed or ascertained defect in the old system, or to regulate some apparent laxity in the observance of ancient methods, or to correct some abuse prevalent somewhere. As the older members of the profession in Missouri will recall, the manner of charging juries in the State at one time was *ore ternus*. The abuse of this method by a certain *nisi prius* judge induced the legislature to enact that the charge should be in writing. And from time to time the legislature, as experience dictated and abuses arose, has prescribed, by positive enactments, rules regulating criminal procedure. It is noticeable that the provision in respect of this manner of charging the jury in criminal trials, is incorporated in said section 1908. No one would say that the requirement that instructions must be in writing is directory and not mandatory. The fifth order of trial is just as mandatory as the fourth. It is further observable in this section that the legislature left some things to the discretion and pleasure of counsel. In the second order of trial " the defendant or his counsel may    *    *    state his defense," but as to the prosecuting attorney, it is prescribed in the first order he " must state the case." In the third order " the parties may offer rebutting testimony." There is no compulsion ; and in the fifth order, if the case is argued at all, " the counsel for the prosecution shall make the opening argument." It is mandatory. Employing, as the legislature did in this section, the terms " may," " must"

and "shall," leave no room for construction. The prose-cuting attorney might not be compelled to make an argument in the case, but if he argues it at all, he must open it with an argument.

I think the legislature, in the interest of humanity and fair play, designed by this fifth order of trial, among other things, to correct the very injustice practiced by the counsel in this case. He declined and refused to argue the case for the State in the opening, but reserved his fire for the close, thus leaving defendant's counsel, in a matter of personal liberty, to grope in darkness as to the ultimate theory of the prosecution, or to waste his effort and time in assailing positions not designed by the prosecution to be maintained. The prosecutor, under our system of government, is the representative of the majesty of the State, the guardian of the laws, and he should never forget nor neglect the fact that his sole duty is to secure justice. He represents all the people, the prisoner at the bar as well. It, therefore, comports with the dignity and high responsibility of his office to practice candor and prosecute with open-handed fairness. To secure justice to the accused, to give him the benefit of all that the constitutional guaranty implies in the right to be heard by counsel, the State's attorney should first state his case to the jury, and if he argues it at all, should make an opening argument, so as to open to the defendant the true ground on which he demands his liberty or his life. From the very necessity of the situation it was impossible for the legislature to say how much statement or how much argument should be made. Much necessarily must be left to the sense of public duty and the proper appreciation of what is right and manly on the part of the counsel and the supervisory power and wise discretion, exercised within legal bounds, of the trial judge. Both should observe the statute in its spirit; and with a right disposition on their part cases could rarely occur where this court would feel called upon to interfere under this statute.

The judgment of the court of appeals is affirmed, and

the judgment of the St. Louis criminal court is reversed and the cause remanded for its action in conformity with this opinion. All concur.