STATE of Missouri, Respondent,

v.

Harvey WILLIAMS, Appellant.

No. WD 32652.

Missouri Court of Appeals,
Western District.

April 20, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied June 1, 1982.

James D. Worthington, Aull, Sherman & Worthington, Lexington, for appellant.

John Ashcroft, Atty. Gen., Priscilla Gunn, Asst. Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before SHANGLER, P. J., and PRITCHARD and DIXON, JJ.

SHANGLER, Presiding Judge.

The defendant was convicted of receiving stolen property of the value of $150 or more, a Class C felony [§ 570.080], and was sentenced to a term of three years and six months. The appeal contends the evidence did not prove the substantive offense and that the judgment was otherwise erroneous.

In the month of July of 1979, three typewriters were stolen from the Higginsville High School, among them two electric machines, an IBM and an Adler. Each was marked with a distinctive serial number and with the Lafayette C–1 School District label. In the month of August of 1980, Missouri Highway Patrol Officer Viessman on undercover duty, was approached by one Haynes at a private residence in Higginsville about the purchase of typewriters. Viessman expressed interest. The officer in the company of another covert agent drove Haynes to another location in that city and picked up one *Tony* Williams. They drove to a trailer home at still another location, but the door was locked and no one was there. Then they drove to another location still and picked up the defendant *Harvey* Williams and returned to the trailer. The defendant Williams entered the trailer [whether by key or simply allowed entrance was not shown] and the rest followed. Inside, a female stood by the kitchen sink; they passed her and proceeded to a bedroom. There the defendant Williams removed a blanket from over two typewriters. Viessman examined the machines and *Tony* Williams said he wanted $150 for them, $75 each. Viessman offered $125, paid over the amount to *Tony*, and the transaction was concluded. The defendant Williams and Tony Williams each carried a typewriter from the interior bedroom to the Viessman vehicle, and the agents left with the property. In the entire course of the transaction, there was no conversation between Viessman and the defendant Williams.

There was testimony from High School administrative assistant Davis that the two typewriters purchased by Viessman were among those stolen from the school in July of 1979. The serial numbers and descriptions of the machines were recorded in the regular inventory kept by the schools. The witness testified that the value of one of the machines was $385 and that of the other was $375. Those values were derived from the inventory record, Exhibit 1. That evidence was withdrawn from the jury, however, for want by the prosecution to disclose that record to the defense upon request for discovery. The undercover agent Viessman then attributed a $325 and $375 value to the respective typewriters. Those opinions were derived from a personal purchase two years before of an Olivette electric machine for $300, a typewriter "less valuable and less complex" than the stolen machines, and a comparison of the Olivette cost with the store prices of the other brands.

█ The defendant Williams contends that the prosecution failed to prove the elements of the offense so that he was entitled to a direction of acquittal. The substantive offense is defined in § 570.080:

"A person commits the crime of receiving stolen property if for the purpose of depriving the owner of a lawful interest therein, he receives, retains or *disposes of property of another knowing that it has been stolen.*" [emphasis added]

Thus, a person who disposes of the property of another for the purpose to deprive the owner of a lawful interest therein and who believes the property has been stolen, commits the crime of receiving stolen property. See The New Missouri Code, Manual for Court Related Personnel § 15.6 (1978). [The statute then assigns the crime as a Class C felony where the property involved is $150 or more, otherwise as a Class A misdemeanor.] The defendant is quite wrong to argue that the prosecution was

required to prove that he *knew* the property was stolen to sustain conviction under § 570.080. The cases the defendant cites for that proposition [*State v. Montgomery*, 591 S.W.2d 412 (Mo.App.1979) and *State v. Hayes*, 597 S.W.2d 242 (Mo.App.1980)] were decided under predecessory § 560.270 which imposed the proof of that singular state of mind as a component of the offense. The successor code § 570.080 [on which conviction rests] allows the prosecution to make a case by evidence that *the defendant knows or believes the property he disposes of* [or retains, or receives] *was stolen.* See The New Missouri Code, Manual for Court Related Personnel § 15.6, Comments (1978). The new code relieves the rigor of a proof which confines criminal fault to an act done with *guilty knowledge* by a less rigorous, but equally valid, mental disposition for culpability—*guilty belief.*

■ The defendant is also quite wrong to argue that there must be proof that the accused *received stolen property from another* in order to sustain conviction. The defendant once again reverts to the criminal law since displaced by the code. See *State v. Delay*, 455 S.W.2d 1, 3 (Mo.1970). The new § 570.080, as did old § 560.270, continues to impose criminal fault against one who *receives* stolen property—and, in such case, the evidence must prove a transfer from another to the receiver who then knows [or believes] the property was stolen. The new § 570.080, however, also imposes criminal fault against one who *retains* or *disposes* the property with knowledge or belief it was stolen. "The words 'retains' and 'disposes' can denote single-party transactions which the words in § 560.270 [now repealed] do not." *State v. Davis*, 607 S.W.2d 149, 153[6] (Mo.banc 1980). The defendant was accused and convicted of just such a single-party transaction.

■ The question remains whether the accusation was proven. The elements of the formal charge and of the submission were: that the defendant *disposed* of two described electric typewriters—of the value of $150 or more—which he knew or believed were stolen with the purpose to deprive the owner of its lawful interest in the property. The defendant asserts, but only casually—without developed argument or attempt at rationale—that "[t]here was no evidence of any disposal—whatever that is." The offense was submitted on the MAI–CR2d 24.-10 model prescribed by rule. The term *disposed of* the instruction employs was not defined, and the defendant complains the submission was made vague by that lapse. The Notes on Use to MAI–CR2d 24.10 [conformable to chapter definitions § 570.010 and MAI–CR2d 33.01] delineate the terms subject to definition in an instruction for receiving stolen property. *Disposed of*—or variant—is not among them. It is the sense of MAI–CR2d that *disposed of* needs no definition as to offenses under chapter 570 and will yield a common usage to jurors of normal intelligence. The defendant suggests [again without systematic argument or rationale], however, that the evidence does not prove possession of the property—presumably, as a necessary antecedent to disposal of the property. The new § 570.-080 does not make possession, explicit or implicit, an element of the offense where the accusation charges and the instruction submits the defendant *disposed of* [as contradistinct from *received* or *retained*] property he knew or believed was stolen. The old § 560.270, which required proof of possession to convict for receiving stolen property, was satisfied by evidence that the defendant had the power and intent to control the stolen property. *State v. Dittman*, 569 S.W.2d 363, 364[1] (Mo.App.1978); *State v. Norman*, 586 S.W.2d 45, 47[2, 3] (Mo.App.1979). The new § 570.080—when the accusation charges a *disposal* of stolen property—can require no more.[1]

■ That the defendant was in a position of dominion over the property and exercised that control—that is, disposed of the typewriters—was an inference shown by the

---

1. The definition of § 570.010 which appertains to chapter 570, Stealing and Related Offenses, defines the generic term "Receiving" as: "ac-

quiring possession, *control* or title or lending on the security of the property." [emphasis added]

sequence of events: access to the structure where the stolen property was sheltered was possible only by the presence of defendant Williams. The door to the premises was locked to the police agents, the other Williams, and Haynes without the defendant. He led them inside the trailer, strode through the premises as one with some right to do so—without necessity of permission from the female occupant—and into the bedroom where the typewriters were kept. He then removed the blanket which hid them, and after the other Williams haggled with the purchasers over the price of the typewriters and the deal was struck, the defendant carried one of the machines to the Viessman vehicle outside. The guilty belief component of the offense is shown by these circumstances in evidence: The conjunction of evidence that the typewriters bore the identification decals "Lafayette County School C–1, Higginsville, Missouri" and the defendant concealed the property and so treated the sale as a clandestine transaction allow the inference that the defendant believed the property was stolen. *State v. Davis*, 590 S.W.2d 418, 419[3] (Mo. App.1979); *State v. Wood*, 553 S.W.2d 333, 335[5, 6] (Mo.App.1977).

The defendant doubts that the value component of the offense was proven. The information charged, and the instruction submitted, a Class C felony—that is, that the value of the stolen property was $150 or more. In the absence of such a proof [or that the person who receives (disposes) the property is a dealer in goods of that type], the offense becomes a Class A misdemeanor and the mete of punishment less severe. The standard of value the proof requires means, if ascertainable, "the market value of the property at the time and place of the crime." § 570.020(1). The evidence of value of the typewriters derived from the business records of the school was withdrawn as a sanction for failure of the prosecution to make discovery, and so was not before the jury. The other source for the proof of that element was the testimony of Officer Viessman that he made particular inquiry at various suppliers of the sales prices of IBM and Adler electric typewriters of the

kind stolen from the school and purchased from the defendant. He inscribed the determined values—some $300 for one and $375 for the other—on his official report.

■ The essentials for an expert opinion of value are: " 'First, a knowledge of the intrinsic properties of the thing; secondly, a knowledge of the state of the market.' " 2 Jones on Evidence § 14.50, 732 (Gard 6th ed. 1972); *Sharp v. Niagara Fire Insurance Co.*, 164 Mo.App. 475, 147 S.W. 154, 159[9] (1912). That a witness qualifies to give such testimony must be left, for the most part, to the discretion of the trial judge. *Baker v. Ford Motor Company*, 501 S.W.2d 11, 18[6] (Mo.1973). An opinion based on personal observation and knowledge rests on a more reliable basis than one which issues hypothetically. *De Donato v. Wells*, 328 Mo. 448, 41 S.W.2d 184, 187[1–4] (1931). To qualify as a witness on value, one need not be an expert in the usual sense of the word. It suffices that the witness knows the property and possesses information and knowledge so as to enable him to form an intelligent judgment. "[I]f this knowledge and information is superior to that possessed by the ordinary person who composes the jury, then he should be permitted to testify." *State ex rel. State Highway Commission v. Bloomfield Tractor Sales, Inc.*, 381 S.W.2d 20, 24[3–5] (Mo.App.1964). Thus, the only true criterion propounds this relative test: "On *this subject* can a jury from *this person* receive appreciable help?" 7 Wigmore on Evidence § 1923, 29 (Chadbourn rev. 1978).

■ The value testimony of witness Viessman rested on personal observation and knowledge. He inspected the machines as a precondition to purchase, took possession of the property, and then used those typewriters as the basis for comparison with the cost of such machines on the open market. His knowledge of the intrinsic qualities of the property and their cost on the open market was a sufficient basis for an intelligent judgment of value. That personal knowledge was also a credible basis for the testimony as to the value of the

machines, and was sufficiently superior to the knowledge possessed by the jury as to render the opinion helpful on that issue and so, admissible.

■ The final contention is that the court erred by the submission of a definition of the term *receiving* because "there was no evidence offered of receiving and none of the elements of receiving was offered into evidence, whatever they may be." The verdict-director submitted [within the full context of the other standard propositions of offense under MAI–CR2d 24.10] that if the jury find and believe from the evidence beyond a reasonable doubt:

> "Third, that at the time defendant *disposed of* this property, he knew or believed it had been stolen, and

> \*     \*     \*     \*     \*     \*

> then you will find the defendant guilty of *receiving* stolen property." [emphasis added]

Thus, as we note, the indictment charged, the evidence proved, and the charge to the jury submitted the *disposes* [as contradistinct from *receives* or *retains*] species of *receiving* stolen property. The term *receiving* therefore, was a component of the mandatory form and was subject to definition at the option of the court, or at the request of either party. MAI–CR2d 24.10, Notes on Use. The definition of *receiving* rendered by MAI–CR2d 33.01, as we note, encompasses *control* of the property, and so appertains compatibly to the *disposes* species of the crime.

The judgment is affirmed.

All concur.