**STATE of Missouri, Plaintiff–Respondent,**

v.

**Leroy W. MYERS, Defendant–Appellant.**

**No. SD 31357.**

Missouri Court of Appeals,
Southern District,
En Banc.

May 11, 2012.

Margaret M. Johnston, Columbia, MO, for appellant.

Chris Koster, Attorney General, and Jennifer A. Wideman, Assistant Attorney General, Jefferson City, MO, for respondent.

GARY W. LYNCH, Judge.

Following a guilty verdict by a jury and sentence by the trial court to serve eight years in the Department of Corrections, Leroy W. Myers ("Defendant") appeals his conviction as a prior and persistent offender of the class C felony of receiving stolen property with a value of $500.00 or more, in violation of section 570.080.[1] He claims that the State failed to present any evidence that he "received" any stolen property from anyone. Finding that the State presented sufficient evidence of Defendant "receiving" stolen property, as that term is defined by section 570.010.13, we affirm.

### Factual and Procedural Background

John Wagner was a long-time Ford Mustang enthusiast as well as an auto mechanic. He owned a 1965 Ford Mustang. Wagner collected numerous automotive parts, which he stored in five storage sheds located on the property next door to his residence.

Late in August 2009, Wagner noticed that one of the storage sheds had been broken into and discovered that valve covers and a black tub containing miscellaneous parts and tools were missing. The tub was covered with automotive-industry sponsorship stickers. At that time, he did not know what additional items might have been taken because he had so many parts stored throughout the five sheds and could not remember in which shed he had stored certain items. He did not report the theft to police at that time. Several days later, on or about August 28, 2009, Wagner found that the same shed had been broken into again and additional items were missing. He notified the police and reported the theft of chrome valve covers, a black tub containing miscellaneous parts, and a "Snap-on grill shaped like a tool box." The following day, he reported that a cooling fan was also missing.

On August 31, 2009, Aaron Greek, a friend of Wagner, was at work at Missouri Mustang, an automotive salvage yard specializing in Mustang parts, when Defendant entered and inquired about selling some miscellaneous car parts and Mustang wheels and tires. Greek told Defendant that he would have to speak to the owner, Russell Sidenstricker, who was out to lunch at that time. Defendant left but returned later and spoke with Sidenstricker outside in the parking lot. Defendant told him he had automotive parts left over from a project that were taking up space in his garage, and he was interested in selling them. Defendant first offered to sell everything for $350.00, but Sidenstricker offered to pay approximately $260.00 in cash, which Defendant accepted. Sidenstricker did not purchase the black tub that had contained some of the parts;

---

1. All statutory references are to RSMo Cum. Supp.2009, unless otherwise indicated.

instead, Sidenstricker transferred those parts to a cardboard box, and Defendant left with the tub.

When Wagner reported the missing items to police, he also told his machinist and good friend, Joey Davis, about the break-ins and described what items were taken. Davis also owned a Mustang and often helped Wagner work on his vehicles. Soon after Wagner reported the theft, Davis was at Missouri Mustang to pick up something, when he saw what he believed to be some of Wagner's missing property. Davis called Wagner and asked Wagner if his "rims and headers and stuff" were also missing because Davis had seen those items along with Wagner's valve covers and miscellaneous parts and tools that he had reported stolen. Wagner then contacted Detective Sergeant David Strubberg with the Carthage police department and advised him that his missing parts might be found at Missouri Mustang.

Detective Strubberg went to Missouri Mustang to investigate and talked to Russell Sidenstricker, who provided the detective with a description of Defendant and the vehicle driven by Defendant, a 1995 red and white Dodge Ram pickup truck. From the description of the vehicle, Detective Strubberg believed that Defendant had been the one who sold Sidenstricker the parts, and he returned later with a photograph of Defendant. Both Sidenstricker and Greek identified Defendant as the person from whom the property had been purchased. Strubberg seized the items Sidenstricker had purchased, and they were processed as evidence.

Defendant lived about three houses away from where Wagner stored his automotive parts. Detective Strubberg went to Defendant's home, and Defendant was arrested that day. A search of his residence disclosed no other stolen property, and Defendant denied knowing anything about the theft.

In his sole point relied on, Defendant alleges that "[t]he trial court erred in overruling [Defendant's] motion for judgment of acquittal" because the State did not prove the offense beyond a reasonable doubt. Defendant contends that the State failed to present evidence that Defendant " 'received' stolen property from anyone[.]" Defendant argues that in order to convict him for receiving stolen property, there must be evidence that a second party was involved, as required by "[d]ecades of Missouri appellate cases" that "have held that where a defendant is charged with receiving stolen property, and the State fails to prove that there was a second party involved, the defendant must be discharged."

### Standard of Review

This court reviews a challenge to the sufficiency of the evidence to determine whether the State adduced " 'sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt.' " *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993) (quoting *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989)). In applying this standard, this court "must look to the elements of the crime and consider each in turn." *Grim*, 854 S.W.2d at 411. We "take the evidence in the light most favorable to the State[,]" granting the State all reasonable inferences from the evidence while disregarding contrary inferences "unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them." *Id.* "[I]n doing so, courts will not supply missing evidence or give the state the benefit of unreasonable, speculative or forced inferences." *State v. Langdon*, 110 S.W.3d 807, 811 (Mo. banc 2003).

### Discussion

In order to fully address Defendant's point, we discuss the current statutory

framework for the offense of receiving stolen property, case law for that offense that developed before the effective date of the current statute, the development of case law after the enactment of the current statute, and we conclude by applying the current statute to the facts of this case.

### Current Statutory Framework

Pursuant to section 570.080.1, applicable here and which first became effective on January 1, 1979, "[a] person commits the crime of receiving stolen property if for the purpose of depriving the owner of a lawful interest therein, he or she receives, retains or disposes of property of another knowing that it has been stolen, or believing that it has been stolen." Section 570.080 "creates the single crime of 'receiving stolen property,' which may be committed in different ways." *State v. Davison*, 46 S.W.3d 68, 76 (Mo.App.2001). "Because Section 570.080.1 defines receiving stolen property as '*receives, retains or disposes* of property of another,' the State has many options in charging and convicting a person of receiving stolen property." *Id.* Here, Defendant was charged, tried, and convicted of violating the "receives" prong, not the "retains" or "disposes" prongs of the statute. Nevertheless, "[t]he addition of the words, 'retains' and 'disposes' to the statute is consistent with the legislative intent to punish the receiving of stolen property because an accused cannot retain or dispose of stolen property without first receiving it." *State ex rel. Westfall v. Campbell*, 637 S.W.2d 94, 98 (Mo.App.1982).

Also enacted effective January 1, 1979, is the inclusion of the definition of "receiving," under section 570.010. Currently designated as section 570.010(13), this definition provides: " 'Receiving' means acquiring possession, control or title or lending on the security of the property[.]" This was the first time this term had been statutorily defined in relation to the offense of receiving stolen property.

### The Law Before the Current Statute

The foundation for the claim Defendant asserts is "[t]he general rule, 'That one cannot at the same time be a principal in the larceny and in the legal sense a receiver of stolen property' was acknowledged in *State v. Honig*, 78 Mo. 249, 252–53 (1883), wherein the court explained that if one 'is a principal actor in the theft—the actual captor of the property, it is illogical and contradictory to say he has received it from another.' " *State v. Webb*, 544 S.W.2d 53, 55 (Mo.App.1976). "Stated in the obverse, the actual thief cannot receive stolen property from himself." *Id.*

The *Honig* case was decided by the Supreme Court of Missouri in 1883, following transfer from the court of appeals in 1880. The facts of that case established that the defendant, charged with receiving stolen property, was actually a principal in a larceny and therefore guilty of larceny rather than receiving stolen property. The indictment charging the defendant alleged that the defendant "feloniously did receive and have[ ]" property and chattels of Thomas B. Hale "before then feloniously stolen, taken and carried away from another." *Honig*, 78 Mo. at 249. The trial court instructed the jury, in part, as follows: "If, from the evidence, you believe and find that the money mentioned in the indictment was by some one, other than the defendant, actually, feloniously stolen, taken and carried away from Thomas B. Hale ... and after it had, by some one other than the defendant, been thus stolen, taken and carried away, the defendant did feloniously take and receive it into his possession...." *Id.* at 251. Pertinent to the "receiving of stolen goods" charge in this case where the defendant was the mastermind of "an organized band of swindlers and thieves in his employ," *id.* at 250, the supreme court found:

The court of appeals held in this case, ( [*State v. Honig*] 9 Mo.App. 298 [ (1880) ],) that one cannot at the same time be a 'principal in the larceny and in the legal sense a receiver of stolen property.' With its reasoning I am well satisfied. It is sustained by a great weight of authority. One object in punishing a person as the receiver of stolen goods, is to prevent the real thief or taker from getting rid of the visible evidence of his crime by transferring the possession to another, and aiding him thereby in converting the property into another form and lessening the chances of detection. If he is a principal actor in the theft-the actual captor of the property, it is illogical and contradictory to say he has received it from another. In view of the uncontradicted evidence in this case it is remarkable that Honig should have been indicted as the mere receiver of the goods stolen by another. He was the organizing, governing and present spirit in the whole scheme and execution. He incited it. He heard and said all that was essential in the plot. He participated in the conversation and as proof conclusive of his actual presence as an aider and abettor at the fact, the moment Hale laid his money down, he appeared within reach to lay his itching fingers on it, as it was shoved across the table by one of his puppets. By all the recognized authorities this made him a joint principal in the theft and in such case 'he surely could not be indicted as a receiver.' *Regina v. Perkins,* 5 Cox C.C. 554 [ (1852) ]."

*Id.* at 252–53.

In *Webb,* the appellate court reviewed an appellant's claim that where the evidence established he was an accessory to the theft and subject to being charged as a principal to the theft pursuant to section 556.170, RSMo 1969, he could not have been convicted of receiving stolen property from himself. *Webb,* 544 S.W.2d at 54. In its discussion of the "general rule" propounded in *Honig,* the court in *Webb* further stated that "the rule apparently came into being for the sole purpose of being applied only to the principal actor who was the 'actual captor' of stolen property." *Webb,* 544 S.W.2d at 54.

In direct support of his claim, Defendant principally relies on three cases involving offenses that occurred before January 1, 1979, where it was held that the State failed to prove the defendant "received" stolen property. First is *State v. Armstrong,* 555 S.W.2d 640 (Mo.App.1977). There, the defendant was charged and convicted under section 560.270, RSMo 1969, for receiving stolen property, and on appeal, the defendant raised a claim that the State failed to prove he received the stolen goods.[2] The defendant's convictions were reversed. The court found that "[i]t is an essential element of reception that there be at least two actors involved, ... that accused received the property from ... some person other than the owner.... The property must have been stolen by someone other than the person accused of receiving stolen goods." *Id.* at 642. While "[t]he evidence may have made a case of stealing against appellant, ... only by resorting to speculation and conjecture may it be said that appellant received the stolen property from another." *Id.* at 643.

Second, Defendant cites to *State v. Inman,* 578 S.W.2d 336 (Mo.App.1979),

2. Section 560.270, RSMo 1969, provided:
Every person who shall buy, or in any way receive, with intent to defraud, any property that shall have been stolen from another, knowing the same to have been stolen, shall, upon conviction, be punished in the same manner and to the same extent as for the stealing of the property so bought or received.

where the defendant's conviction was reversed and the defendant was discharged on the court's determination that "[e]vidence to support the first element of the charged offense ["[t]he property must be 'received in some way from another person' "] is simply nonexistent." *Id.* at 338. The defendant had been charged under section 560.270, RSMo 1969, for receiving stolen property after he was found in possession of a 1975 green Chevrolet pickup truck that had been stolen from a car lot in Bloomfield, Iowa. The appellate court found "there is not one iota of evidence as to who stole the 1975 green Chevrolet pickup track ... or how it ever came into defendant's possession." *Id.* Citing to *Armstrong,* the *Inman* court set out "the essential elements ... of the offense of receiving stolen property: '(1) The property must be "received in some way" from another person; (2) the property at the time of reception must be stolen property; (3) the receiver, at the time of reception, must have guilty knowledge that it is stolen property; and (4) the accused must have received the property with a fraudulent or criminal intent.' " Further, the opinion cites the "general rule" underlying the first element, "that one cannot at the same time be a principal in the larceny and in the legal sense a receiver of stolen property," as stated in *Honig. Inman,* 578 S.W.2d at 337. In addition, the *Inman* court found that the standard of review, drawing from a permissible inference to support the first essential element, did not aid the State, because "although possession of recently stolen property may be invoked to establish an inference that the possessor is the thief, ... it may not be invoked to establish an inference that the possessor received the property from another[.]" *Id.* at 338.

Third, in *State v. Davis,* 607 S.W.2d 149 (Mo. banc 1980), the defendant was charged and convicted of violating section 560.270, RSMo 1969. After weapons were stolen from the gun rack in a pickup truck owned by Bobby Hall, law enforcement was informed by two individuals that they had seen two such weapons at the defendant's home. The defendant's wife provided the serial numbers of the weapons to law enforcement; one serial number was identical[ to one reported stolen. *Id.* at 150. A search warrant was obtained and executed, and the weapons were discovered in a cistern outside the defendant's home. *Id.* The defendant was charged with feloniously receiving the rifles and convicted of receiving stolen property. On appeal, the defendant claimed that his conviction was not supported by sufficient evidence to establish that he had received stolen property with the intent to defraud. Our supreme court reversed the defendant's conviction and ordered the defendant discharged. In its decision, the court stated that "an essential element of receiving stolen property [is] that there must be at least two actors involved; the accused must receive the property from another, some person other than the owner." *Id.* at 152. Furthermore, "[a] conviction for receiving stolen property cannot stand where the evidence fails to show that defendant was the receiver rather than the taker of stolen property." *Id.* And, "[w]hile an unexplained possession of recently stolen property can give rise to an inference that the possessor is the thief, ... possession of recently stolen property is no basis for an inference that the possessor received, rather than stole, the property." *Id.*

While the *Davis* court found that the state "failed to make a submissible case of receiving stolen property by neglecting to show that appellant received the stolen property from another with an intent to defraud[,]" the court made the following observations:

> Under the new criminal code, the offense of receiving stolen property has been redefined and, unlike section

560.270, RSMo 1969, for which appellant was tried, now contemplates single-party transactions. We believe what the court of appeals recently said in *State v. Jackson, supra,* comparing the old and new provisions defining the offense of receiving stolen property, is instructive:

"Section 560.270 was obviously intended to punish any 'person who shall buy, or in any way receive . . . any property that shall have been (previously) stolen from another.' It is apparent that for there to be a 'person who shall buy' previously stolen property, there must be a two-party transaction between a seller and a buyer. Likewise, in general context of the statute, any 'person who shall . . . in any way receive' from another person, denotes a two-party transfer of possession from a donor, giver, passer, etc., to a receiver, recipient, acceptor, etc. This problem appears to have been obviated by the enactment of § 570.080 RSMo 1978 (L.1977 S.B. 60, eff. 1–1–79) which provides: '1. A person commits the crime of receiving stolen property if for the purpose of depriving the owner of a lawful interest therein, he receives, retains or disposes of property of another knowing that it has been stolen, or believing that it has been stolen. . . .' The words 'retains' and 'disposes' can denote single-party transactions which the words in § 560.270 (now repealed) do not."

*Davis,* 607 S.W.2d at 153 (quoting *State v. Jackson,* 594 S.W.2d 377, 378 (Mo.App. 1980)).

### *Case Law Involving Offenses After the Current Statute Became Effective*

In *State v. Williams,* 635 S.W.2d 55 (Mo.App.1982), the State charged that the defendant *disposed* of two electric typewriters valued at $150.00 or more (the minimum value to charge a class C felony under section 570.080, RSMo 1978) "which he knew or believed were stolen with the purpose to deprive the owner of its lawful interest in the property." *Id.* at 58. The defendant challenged the sufficiency of the evidence to prove that he received stolen property from another. In addressing the language of the receiving-stolen-property statute, the western district of this court discussed the 1978 enactment of section 570.080, which became effective January 1, 1979, and stated, "The new § 570.080, as did the old § 560.270, *continues to impose criminal fault against one who receives stolen property—and, in such case, the evidence must prove a transfer from another to the receiver who then knows (or believes) the property was stolen.*" *Id.* (emphasis added). Further, unlike the displaced statute, section 570.080 "also imposes criminal fault against one who retains or disposes the property with knowledge or belief it was stolen." *Id.* Quoting *Davis,* 607 S.W.2d at 153, the court further stated, "The words "retains" and "disposes" can denote single-party transactions[,] which the words in § 560.270 (now repealed) do not.'" The western district determined that there was sufficient evidence to prove the State's contention that the defendant *disposed* of the stolen property, in that there was evidence that the property that was stolen was sold to an undercover agent by the defendant at the defendant's home where the agent saw that the property was hidden under a blanket in a bedroom. The opinion makes no mention of any facts that established who stole the typewriters in the first place. Because *Williams* was resolved based upon the "disposes" prong of section 570.080, the court was not called upon to apply any definition for "receives," and any discussion of that prong in the opinion was necessarily dicta. Furthermore, in that dicta, no mention was made of the statuto-

ry definition of "receiving" contained in section 570.010.

Defendant cites us to *State v. Lindsey*, 868 S.W.2d 114 (Mo.App.1993), where the defendant was charged under section 570.080, RSMo 1986, with " 'receiving' stolen property—not retaining or disposing of it." *Id.* at 116. The court noted that "[t]he verdict-directing instruction also required the jury to find only that Lindsey 'received' property which he knew or believed to be stolen." *Id.* On appeal, the defendant argued "that the state had to prove that he received stolen property from another to sustain a conviction." In the court's examination of "the sufficiency of the evidence to support [defendant's] conviction of a two-party transaction[,]" it observed that a witness testified that he "saw a man, definitely not Lindsey, carrying a Logic television set out of the house" from which the television had been stolen and that "[p]olice found Lindsey a brief time later in the house's backyard with a remote control for a Logic television set in one of his pockets." *Id.* at 117. The court opined that "[t]he jury could have reasonably inferred that Lindsey received the property from the ... man described by [the witness]." *Id.* While the court ultimately found that there had been sufficient evidence presented that the defendant received stolen property from another, it explicitly agreed with the defendant's contention that section 570.080 anticipates that " 'the evidence must prove a transfer from another to the receiver who then knows [or believes] the property was stolen[,]' " *Id.* at 116 (quoting *Williams*, 635 S.W.2d at 58). Nowhere in its opinion, however, does the court mention the statutory definition of "receiving," as contained in section 570.010.

Finally, we turn to *State v. Price*, 980 S.W.2d 143 (Mo.App.1998), where a defendant's conviction for receiving stolen property under section 570.080, RSMo 1994, was reversed and the defendant was discharged upon the court's determination that the State presented no evidence to support a finding that the property at issue was stolen by anyone other than the defendant. *Id.* at 143. An apartment employee and a tenant reported seeing the defendant pushing a cart containing items stolen from a garage that had been left unlocked and unattended only five to ten minutes before they spotted the defendant. The tracks left by the cart in the snow on the driveway "made it obvious that the shopping cart had come from the apartment building's garage[,]" and there was no one else around who could have accessed the garage and pilfered the items within the five-to-ten minute time window. *Id.* at 144. The eastern district of this court noted that the State requested that the jury find the defendant guilty of either burglary or receiving, "without reference to any evidence that supported a finding that someone stole the property and thereafter, Defendant received it." *Id.* Unlike in the case currently before this court, however, the State in *Price* conceded that the defendant's "conviction should be reversed." *Id.* at 143. In its analysis, the court cited *Lindsey*, 868 S.W.2d at 116, and *Williams*, 635 S.W.2d at 58, in stating that "receiving stolen property" suggests a two-party transaction (while *retains* and *disposes* can denote single-party transactions). *Id.* As in *Lindsey* and *Williams*, the *Price* court made no mention in its opinion of the statutory definition of "receiving" contained in section 570.010.

### Application of Section 570.080 to the Facts of this Case

In determining the sufficiency of the evidence to support his conviction, Defendant asks this court to define "receives" as used in section 570.080.1 in accordance with the *Armstrong, Inman,* and *Davis* line of cases to require that "an essential

element of *receiving* stolen property [is] that there must be at least two actors involved; the accused must *receive* the property from another, some person other than the owner." *Davis,* 607 S.W.2d at 152 (emphasis added). The State, on the other hand, while conceding "that no evidence of a second party from whom [Defendant] received the stolen property was presented at trial," argues that the "plain meaning of the statutory definition of the word 'receive,'" as contained in section 570.010(13), does not require such proof.[3] We agree with the State.

 "'Statutory interpretation is an issue of law which this court reviews de novo.'" *State v. Lewis,* 188 S.W.3d 483, 486 (Mo.App.2006) (quoting *State ex rel. Nixon v. Premium Standard Farms, Inc.,* 100 S.W.3d 157, 161 (Mo.App.2003)). "Courts apply certain guidelines to interpretation, sometimes called rules or canons of statutory construction, when the meaning is unclear or there is more than one possible interpretation." *State v. Rowe,* 63 S.W.3d 647, 649 (Mo. banc 2002). When the words are clear, however, there is nothing to construe beyond applying the plain meaning of the law. *Id.* (citing *State ex rel. Mo. Pac. R.R. v. Koehr,* 853 S.W.2d 925, 926 (Mo. banc 1993)).

> Words employed in a statute are given their usual and ordinary meaning unless the legislature itself has defined a particular term or phrase. The statutory definition should be followed in the interpretation of the statute to which it relates and is intended to apply and supersedes the commonly accepted dictionary or judicial definition and is binding on the courts.

*State v. Harris,* 156 S.W.3d 817, 822 (Mo. App.2005) (quoting *State ex rel. Nixon v. Estes,* 108 S.W.3d 795, 798 (Mo.App.2003)).

 "In interpreting a statute, we are to ascertain the intent of the legislature." *Harris,* 156 S.W.3d at 822. Such intent, however, can only be derived from the words of the statute itself. *Rowe,* 63 S.W.3d at 650 (citing *Spradlin v. City of Fulton,* 982 S.W.2d 255, 258 (Mo. banc 1998)). "Courts do not have the authority to read into a statute a legislative intent that is contrary to its plain and ordinary meaning." *Id.* (citing *Kearney Special Rd. Dist. v. County of Clay,* 863 S.W.2d 841, 842 (Mo. banc 1993)). "A court will look beyond the plain meaning of the statute only when the language is ambiguous or would lead to an absurd or illogical result." *Akins v. Dir. of Revenue,* 303 S.W.3d 563, 565 (Mo. banc 2010).

 "[R]eceives," as used in section 570.080.1, references the statutory definition of "receiving" contained in section 570.010(13). *State v. Watson,* 715 S.W.2d 277, 281 (Mo.App.1986). As relevant to this case, this definition only required the State to prove that Defendant acquired possession or control of the property in question. Section 570.010(13). The plain meaning of "acquire" is "to come into possession or control of often by unspecified means." *Merriam–Webster's Collegiate Dictionary* 11 (11th ed.2005). Therefore, nothing in the plain meaning of the statutory definition required proof of how or from whom Defendant acquired the property. The plain meaning only required proof of actual possession or control of the property at the relevant point in time. Because we are bound to follow and apply the statutory

---

**3.** Defendant did not address or mention in any manner this statutory definition in his initial brief. After the State raised this issue in its responding brief, Defendant chose not to reply to the State's argument by filing a reply brief as allowed by Rule 84.04(g) as made applicable by Rule 30.06(d).

All rule references are to Missouri Court Rules (2011).

definition of "receiving" to the exclusion of any previous judicially created definitions, *Harris,* 156 S.W.3d at 822, we respectfully decline to follow the contrary statements made in *Williams* and *Lindsey,* and the contrary holding in *Price,* none of which mentioned or addressed the applicable statutory definition of "receiving" in section 570.010(13).

Here, the testimony of Sidenstricker and Greek about Defendant's actions in bringing the stolen property to Missouri Mustang and then selling the stolen items was sufficient evidence for the jury to conclude that Defendant at that point in time had acquired possession and control of the stolen property. Therefore, sufficient evidence was presented by the State that Defendant "received" stolen property. Defendant's point is denied.

### Decision

The trial court's judgment of conviction is affirmed.

All concur.